UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GALAXY SOFTWARE
SOLUTIONS, INC.,

    Plaintiff,

v.

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES,

    Defendant.

Case No. 18-cv-12617
Hon. Matthew F. Leitman

_____/

**<u>OPINION AND ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (ECF #9)</u>**

Plaintiff Galaxy Software Solutions, Inc. filed a petition with Defendant United States Citizenship and Immigration Services ("USCIS") to extend and amend an H-1B visa for one of its alleged employees, Noopur Agarwal (the "Petition"). USCIS denied the Petition. In this action, Galaxy challenges that denial. Galaxy has now filed a motion for summary judgment. (*See* Motion, ECF #9.) For the reasons explained below, the motion is **DENIED**.

**I**

**A**

Galaxy describes itself as a "Project Management Consultancy contractor" that acts as a "seamless extension of [its] clients' IT organization." (Galaxy Letter,

1

ECF #8-1 at Pg. ID 294.) Galaxy says that it employs "approximately 47 full-time staff members," including Ms. Agarwal. (*Id.*) On or about April 18, 2018, Galaxy filed the Petition with USCIS seeking to extend and amend Ms. Agarwal's H-1B visa, which was set to expire on June 27, 2018. (*See* Petition, ECF #8-1 at Pg. ID 279-92.) Galaxy sought the extension and amendment of Ms. Agarwal's H-1B visa so that Ms. Agarwal could remain in the country and perform off-site work as a Systems Analyst/Administrator for the Federal Reserve Bank of Atlanta ("the Bank"). (*See id.* at Pg. ID 282-83; Fed. Reserve March 2018 Letter, ECF #8-1 at Pg. ID 296.)

The H-1B visa that Galaxy sought to extend and amend on behalf of Ms. Agarwal is a nonimmigrant (temporary) employment visa. *See* USCIS, *H-1B Visas for Temporary Workers*.[1] Employers file petitions for H-1B visas on behalf of individuals that they wish to bring into this country and employ. *See id.* There are three "types of individuals who may have petitions filed on their behalf under the H-1B category," including those working in a "specialty occupation." *Id.* As further explained below, when an employer petitions for an H-1B visa in the specialty occupation category, it must show that (1) it has "an employer-employee relationship" with the visa beneficiary and (2) the beneficiary's job "qualif[ies] as a specialty occupation." *Id.*

---

[1] Available at: https://my.uscis.gov/exploremyoptions/h1_visas_for_temporary_workers.

In the Petition, Galaxy sought to amend and extend Ms. Agarwal's H-1B visa under the specialty occupation category, and it attempted to make the two required showings. To that end, Galaxy submitted with the Petition (among other things):

1) A letter from Galaxy Vice President Dileep Tiwari providing background about Galaxy and an overview of Ms. Agarwal's responsibilities at the proposed Bank project. (*See* Galaxy Letter, ECF #8-1 at Pg. ID 294-95.) In the letter, Galaxy insisted that even though Ms. Agarwal would be working for the Bank, Galaxy "would remain Ms. Agarwal's actual employer with the exclusive right and authority to hire, fire, supervise, set her compensation and benefit levels." (*Id.* at Pg. ID 295.)

2) A letter dated March 20, 2018, from the Bank describing Ms. Agarwal's proposed job duties. (*See* Fed. Reserve March 2018 Letter, ECF #8-1 at Pg. ID 296-97.) The Bank said that Ms. Agarwal "is employed by Galaxy Software Solutions, Inc. which directs and supervises her activities, not the Federal Reserve Bank of Atlanta." (*Id.* at Pg. ID 297.) However, in an apparent contradiction, the Bank also said that it had entered into a contract with an entity called Agile 1[2] for vendor management services, and that "[i]n connection with that agreement, Noorpur Agarwal has been contracted *by Agile 1* to

---

[2] Agile 1 is also referred to as "Agile +1" or "AgileOne" throughout the Administrative Record. For the sake of consistency, the Court will continue to refer to it as "Agile 1" with the understanding that each of these three names correspond to the same entity.

provide services to the Federal Reserve Bank of Atlanta as a System Analyst/Administrator…." (*Id.* at Pg. ID 296; emphasis added.)

3) Ms. Agarwal's paystubs from Galaxy. (*See id.* at Pg. ID 321-23.)

**B**

On May 1, 2018, USCIS sent Galaxy a Request for Evidence ("RFE") asking for additional information to support the Petition. (*See* RFE, ECF #8-1 at Pg. ID 62-69.) In the RFE, USCIS explained that the evidence that had been submitted by Galaxy was deficient in two respects.

First, USCIS explained that the evidence did not establish Galaxy's employer-employee relationship with Ms. Agarwal. USCIS highlighted, among other things, (1) the confusion created by Agile 1's apparent connection to Ms. Agarwal's work at the Bank and (2) the lack of a specific description concerning how Galaxy would control Ms. Agarwal's day-to-day work off-site at the Bank:

> Your petition documents the beneficiary's assignment of work with Federal Bank of Atlanta (FRB of Atlanta). Agile 1 is the vendor through whom the beneficiary works to provide services to FRB of Atlanta. The documentation provided does not establish your right to control when, where, and how the beneficiary performs the job with a third party employer.

(*Id.* at Pg. ID 64.) USCIS then identified for Galaxy additional evidence that Galaxy could submit in order to rectify the deficiencies in the evidence of its employer-employee relationship with Ms. Agarwal. (*See id*. at Pg. ID 64-65.)

4

Second, USCIS said that Galaxy failed to demonstrate that Ms. Agarwal would be "employed in a specialty occupation." (*Id*. at Pg. ID 63.) In USCIS' opinion, Galaxy's submission did "not establish the depth, complexity, level of specialization, or substantive aspects of the duties for which [Ms. Agarwal] would be responsible." (*Id*. at Pg. ID 67.) USCIS then identified for Galaxy a long list of evidence that Galaxy could submit to establish that Ms. Agarwal would, in fact, be performing a specialty occupation at the Bank. (*See id*. at Pg. ID 67-68.)

C

On June 21, 2018, Galaxy, through counsel, responded to the RFE. (*See* Galaxy Counsel Letter, ECF #8-1 at Pg. ID 70-83.) The response included both additional evidence and extended argument by counsel as to why USCIS should grant the Petition. (*See id.* at Pg. ID 86-251).

Galaxy first attempted to demonstrate that it would have an employer-employee relationship with Ms. Agarwal even though she would be working at the Bank. To that end, Galaxy submitted, among other things, a new letter from the Bank stating that Galaxy would control Ms. Agarwal's work at the Bank, evidence that Galaxy paid Ms. Agarwal, and employee evaluation forms that Galaxy completed for Ms. Agarwal showing that Galaxy was the entity that evaluated her performance. (*See* Fed. Reserve June 2018 Letter, ECF #8-1 at Pg. ID 87; Agarwal Paystubs, ECF #8-1 at Pg. ID 386-88; Agarwal Evaluation Forms, ECF #8-1 at Pg.

5

ID 114-17.) This information appeared to provide at least some support for Galaxy's contentions that it employed Ms. Agarwal and that it would control her work at the Bank.

But Galaxy's response to the RFE also added to the confusion surrounding the precise nature of Galaxy's relationship with Ms. Agarwal and its connection to her work at the Bank. For instance, while the materials that Galaxy initially submitted in support of the Petition indicated that a third party, Agile 1, played a role (along with Galaxy) in Ms. Agarwal's placement at the Bank, Galaxy's response to the RFE suggested for the first time that a different third party – a never-before-identified entity called Zinncorp – also played a role in Ms. Agarwal's assignment to the Bank. Galaxy offered the following diagram to illustrate the chain of relationships between itself and the Bank:

Galaxy (Petitioner) → Zinncorp (Vendor) → Agile 1 (Management Service Provider) → Federal Reserve Bank of Atlanta (End-Client)

(Galaxy Counsel Letter, ECF #8-1 at Pg. ID 74.)

Galaxy claimed that the contractual relationships within this chain retained for Galaxy the right to control Ms. Agarwal's work at the Bank (*see id.* at Pg. ID 72-75), but it failed to submit a complete set of the relevant contracts. By way of example, it submitted only two (out of sixty-seven total) pages of the master contract

6

between Agile 1 and the Bank.³ (*See* Agile 1/Bank Agreement Excerpt, ECF #8-1 at Pg. ID 92-93). Galaxy also apparently failed to submit any contracts between Zinncorp and Agile.⁴ Moreover, none of the contracts that Galaxy did submit between and among the four entities in the chain *specifically* addressed Galaxy's right to control Ms. Agarwal's work at the Bank. And Galaxy did not submit any specific explanation as to how Galaxy would actually control Ms. Agarwal's off-site work on a day-to-day basis. Would she receive assignments from Galaxy? If so, how would Galaxy direct her workflow? Furthermore, would she report to a Galaxy supervisor or a Bank supervisor? If it is a Galaxy supervisor, how would that supervisor provide feedback? Would Agile 1 or Zinncorp play a role in either assigning work to Ms. Agarwal or providing her with feedback? Galaxy's response to the RFE did not offer any evidence to answer these questions.

Moreover, Galaxy's response to the RFE made a confusing assertion that Ms. Agarwal "has a valid contract *with Agile 1* to provide services to Federal Reserve

---

³ The parties to that master contract are Agile 1 and the Federal Reserve Bank of Richmond. (*See* Agile 1/Bank Agreement Excerpt, ECF #8-1 at Pg. ID 92-93.) The Federal Reserve Bank of Richmond "encompasses the National Procurement Office." (*Id.* at Pg. ID 92.) In turn, the National Procurement Office "is responsible for executing master agreements for goods and services that benefit the Federal Reserve Banks." (*Id.*)

⁴ Galaxy said that it was submitting the contract between Agile 1 and Zinncorp as an attachment to the RFE response (*see* Galaxy Counsel Letter, ECF #8-1 at Pg. ID 73), but that contract is not in the administrative record, and there is thus no evidence that Galaxy ever submitted that contract to USCIS.

7

Bank of Atlanta." (*See* Galaxy Counsel Letter at Pg. ID 71; emphasis added.) This contention contradicted Galaxy's earlier insistence that *it* (not Agile 1) employed Ms. Agarwal. Indeed, at the hearing before the Court, Galaxy's counsel candidly acknowledged that this contention by Galaxy – on the fundamental question of which entity employed Ms. Agarwal – was incorrect.

Galaxy's response to the RFE also addressed whether Ms. Agarwal's work at the Bank qualified as a specialty occupation. Galaxy contended that Ms. Agarwal's position at the Bank – that of Systems Analyst/Administrator – would be akin to that of a software developer. (*See id.* at Pg. ID 77.) Galaxy then cited various sources – such as the Occupational Outlook Handbook published by the Department of Labor's Bureau of Labor Statistics, and an opinion by Pratap P. Reddy, Ph.D., a purported expert within the information technology field – to support its position that Ms. Agarwal's software development position at the Bank would meet the specialty occupation criteria. (*See id.* at Pg. ID 76-82.) But Galaxy did not fully explain how Ms. Agarwal's job duties in the System Analyst/Administrator position mirrored those of a software developer; instead, Galaxy seemed to assume an equivalence between the two positions. Moreover, there was reason to question that assumption because Galaxy's listing of the duties that Ms. Agarwal would perform at the Bank included many functions that appeared unrelated to software development. (*See, e.g.*, *id.* at Pg. ID 80-82.)

**D**

On July 9, 2018, USCIS denied the Petition. (*See* USCIS Decision, ECF #8-1 at Pg. ID 44-52.) USCIS did so because, in its judgment, Galaxy failed to present sufficient reliable evidence that (1) it would have a valid employer-employee relationship with Ms. Agarwal during her period of work at the Bank, and (2) Ms. Agarwal's work at the Bank would rise to the level of a specialty occupation. (*See id*. at Pg. ID 46-52.) USCIS explained that each of these deficiencies independently justified denying the Petition. (See *id.* at Pg. ID 51-52.)

USCIS first explained that Galaxy's evidence of its employer-employee relationship with Ms. Agarwal was insufficient because that evidence did not demonstrate that Galaxy would have control over Ms. Agarwal's work at the Bank. (*See id.* at Pg. ID 47, citing 8 CFR § 214.2(h)(4)(ii)(2).) USCIS identified the following shortcomings in Galaxy's evidence:

> The letter from Human Resource Department which states "The Federal Bank of Atlanta is currently working with AgileOne to provide technical resources for a project in Minneapolis", and the letter from Business Analyst II- Federal Reserve Bank of Atlanta states, which states "This letter to confirms that the Federal Reserve Bank of Atlanta has entered into an agreement with Agile 1 whereby Agile 1 is responsible for providing the Federal Reserve Bank of Atlanta with vendor management services". Copy of letter from President Zinncorp Inc. which states "This letter to confirm that Ms. Noopur Agarwal is to work as a Systems Analyst/Administrator at our client/Federal Reserve Bank of Atlanta in Minneapolis MN as a sub contractor. Agile is the vendor manager for the Federal Reserve Bank of

Atlanta." However, all the letters do not constitute documentary evidence that such a relationship exists nor do they establish existence of work for the beneficiary.

You asserted that you provided a copy of Managed Services Program Agreement between Agile 1 and the middle vendor, Zinncorp Inc. However, the record does not include this agreement. Thus, the record does not include any contracts and relevant work orders and/or statements of work between both vendors. The record lacks the actual contractual agreements, which involve the beneficiary's employment, between all parties: your company, both vendors, and the end-client. It was also noted that the Managed Services Program Agreement between Agiles 1 [sic] and Federal Reserve Bank of Atlanta only include page l and page 37 of 67 pages of the agreement. As such, you have not demonstrated that a reasonable and credible offer or employment exits [sic] and it is unclear what role you have in the beneficiary's work assignment at Federal Reserve Bank of Atlanta. USCIS is not able to ascertain what the beneficiary would do, where the beneficiary would work, as well as how this would impact circumstances of her relationship with you.

You have provided insufficient evidence to corroborate the existence of any project for the beneficiary, and there is no evidence to establish that any related works have been secured for the beneficiary in any capacity. The record does not establish you will oversee any work the beneficiary will perform; other than putting the beneficiary on your payroll and providing benefits, and stating that you have the right to control and supervise the beneficiary. Therefore, the record does not demonstrate that you will maintain an employer-employee relationship for the duration of the validity of the requested period.

Accordingly, the evidence is insufficient to establish that you have an adequate level of control over the beneficiary through your right to control the manner and means by which the product is accomplished, including when,

> where, and how the beneficiary performs the duties of the proffered position. Therefore, you have not established that you will be a "United States employer" having an "employer-employee relationship" with the beneficiary as an H-1B temporary "employee."

(*Id.* at Pg. ID 48.)

As to the specialty occupation requirement, USCIS found that the "record, as presently constituted, is insufficient to establish that the position offered to the beneficiary qualifies as a specialty occupation and that the beneficiary will perform services in a specialty occupation for the requested period of intended employment." (*Id.* at Pg. ID 51.) In support of that conclusion, USCIS highlighted that the "present record does not demonstrate the specific duties the beneficiary would perform under contract for [Galaxy's] clients." (*Id.*)

In sum, USCIS denied the Petition for two "independent and alternative" bases: Galaxy's failure to establish that it would have an employer-employee relationship with Ms. Agarwal during her placement at the Bank and Galaxy's additional failure to establish that Ms. Agarwal's position at the Bank would be a specialty occupation. (*Id.* at Pg. ID 51-52.)

E

On August 22, 2018, Galaxy filed this civil action in this Court. (*See* Compl., ECF #1.) Galaxy asks the Court to review the denial of the Petition under the Administrative Procedures Act, 5 U.S.C. § 702, *et seq.* (*See id.* at Pg. ID 2.) Galaxy

11

attacks the denial on three grounds. Galaxy alleges that USCIS (1) failed to apply the governing preponderance of the evidence standard to the Petition, (2) wrongly found a lack of evidence that Ms. Agarwal would hold a specialty occupation at the Bank, and (3) erroneously found insufficient evidence of an employer-employee relationship between Ms. Agarwal and Galaxy. (*See id.* at Pg. ID 3-9.)

On December 21, 2018, Galaxy filed its pending motion for summary judgment. (*See* Mot., ECF #9.) In the motion, Galaxy presents three primary attacks on the denial of the Petition:

1) "USCIS arbitrarily and capriciously denied Galaxy Software Solutions H-1B petition despite clear evidence of a valid employer-employee relationship that satisfied the plain language of the statute and regulations." (*Id.* at Pg. ID 416-20.)
2) "USCIS failed to properly consider and apply the plain language defining a 'specialty occupation' where the evidence clearly demonstrated that all required elements were present to demonstrate Galaxy's right to control." (*Id.* at Pg. ID 420-26.)
3) "USCIS failed to apply the 'preponderance of evidence' standard in this case which led to their inappropriately denying Plaintiff's petition." (*Id.* at Pg. ID 426-27.)

USCIS filed its response in opposition to the motion for summary judgment on February 25, 2019. (*See* Resp., ECF #14.) Galaxy then filed a reply to USCIS's response on March 11, 2019. (*See* Reply, ECF #15.) Finally, USCIS filed a sur-reply on March 22, 2019. (*See* Sur-Reply, ECF #16.)

The Court held a hearing on Galaxy's motion for summary judgment on May 9, 2019.

## II

This Court recently explained the procedural rules governing, and narrow standard of review applicable in connection with, a motion for summary judgment in an action challenging the denial of an H-1B visa under the Administrative Procedures Act:

> When a federal court is reviewing final agency action, the usual rules and standards governing summary judgment do not apply. *See Alexander v. Merit Sys. Prot. Bd.*, 165 F.3d 474, 480-81 (6th Cir. 1999); *Integrity Gymnastics & Pure Power Cheerleading, LLC v. U.S. Citizenship & Immigration Servs.*, 131 F.Supp.3d 721, 725 (S.D. Ohio 2015). Summary judgment simply "'serves as the mechanism for deciding, as a matter of law, whether an agency action is supported by the administrative record and is otherwise consistent with the APA standard of review.'" *Singh v. Johnson*, No. 15-cv-12957, 2016 U.S. Dist. LEXIS 82890, 2016 WL 3476701, at *7 (E.D. Mich. June 27, 2016) (quoting *Resolute Forest Prods., Inc. v. U.S. Dep't of Agric.*, 187 F.Supp.3d 100, 106 (D.D.C. 2016)).
>
> Under the APA, the federal courts may "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also Simms v. Nat'l Highway Traffic Safety Admin.*, 45 F.3d 999, 1003 (6th Cir. 1995). In reviewing agency action under this narrow standard, the reviewing court may not substitute its judgment for that of the agency even if the court may disagree with the agency's decision. *Marsh v. Oregon Nat. Res. Council*, 490 U.S.

360, 378, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989); *Simms*, 45 F.3d at 1003.

The reviewing court must base its review on the administrative record and may not consider any new evidence. *Alexander*, 165 F.3d at 481. The agency action may be reversed only

> if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view of the product of agency expertise.

*Simms*, 45 F.3d at 1004 (quoting *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) ).

*Altimetrik Corp. v. Cissna*, No. 18-10116, 2018 WL 6604258, at ** 2–3 (E.D. Mich. Dec. 17, 2018). Judicial review of an H-1B visa denial under the above-described arbitrary and capricious standard is "narrow." *Fast Gear Distributing v. Rodriguez*, 116 F.Supp.3d 839, 844 (E.D. Mich. 2015) (citing *Marsh v. Oregon Natural Resources Council*, 390 U.S. 360, 376 (1989) and *Simms*, 45 F.3d at 1003).

### III

### A

Galaxy filed the Petition pursuant to Section 1184 of the Immigration and Nationality Act (the "INA"), 8 U.S.C. § 1184. A provision of Section 1184 of the INA authorizes an "importing employer" to petition the Attorney General for

issuance of an H-1B visa in a specialized occupation field and authorizes the Attorney General to issue such a visa for a five-year period of admission. 8 U.S.C. §§ 1184(c)(1), (c)(2)(D)(ii).

USCIS has issued a series of regulations implementing the H-1B visa provisions of the INA. One of those regulations provides criteria for determining whether an H-1B petitioner qualifies as the "employer" of the proposed visa beneficiary. 8 C.F.R. § 214.2(h)(4)(ii). That regulation defines a "United States employer" as "a person, firm, corporation, contractor, or other association, or organization in the United States which: (1) Engages a person to work within the United States; (2) *Has an employer-employee relationship with respect to employees under this part, as indicated by the fact that it may hire, pay, fire, supervise, or otherwise control the work of any such employee*; and (3) Has an Internal Revenue Service Tax identification number." *Id.* (Emphasis added.) As noted above, USCIS denied the Petition, in part, based upon its determination that Galaxy failed to satisfy the second element of this definition.

### B

USCIS did not act arbitrarily and capriciously when it determined that Galaxy failed to demonstrate that it would have an employer-employee with Ms. Agarwal during her proposed placement at the Bank. While Galaxy did present some evidence tending to establish that it would have such a relationship with Ms.

Agarwal while she worked at the Bank, USCIS did not unreasonably conclude that Galaxy's evidence was insufficient. Indeed, there were meaningful shortcomings in Galaxy's submissions, and these flaws were sufficient to justify USCIS's denial of the Petition.

First, there were material gaps in the evidence concerning Galaxy's right to control and supervise Ms. Agarwal's work at the Bank. Galaxy failed to provide all of the contracts governing the relationships between the corporate entities in the chain between Galaxy and the Bank, and the contracts that Galaxy did provide are high-level agreements that do not specifically address whether and how Galaxy would control the day-to-day work of Ms. Agarwal at the Bank. Moreover, as Galaxy's counsel candidly acknowledged at the hearing before the Court, Galaxy failed to supply USCIS with a copy of Ms. Agarwal's employment contract. Simply put, Galaxy failed to point to any binding agreements that directly established its right to control Ms. Agarwal's work at the Bank and/or how it would exercise that control. As USCIS fairly observed, given the gaps in Galaxy's submissions, "key questions concerning Galaxy's relationship" with Ms. Agarwal remain "unanswered," including:

> Who has supervision of the on-site IT workers at the Federal Reserve Bank in Minneapolis, specifically [Ms. Agarwal], and is that person an employee of Galaxy? If the beneficiary reports regularly and directly to Galaxy's Vice President, Dileep Tiwari (as stated in Zinncorp's letter), by what mechanism does Mr. Tiwari supervise the

>work at the Federal Reserve? Is he even permitted to do so under the three contracts linking the Federal Reserve to Galaxy whose existence and terms remain unproven? What is the organizational structure at Galaxy, specifically including the nature of its presence at the Federal Reserve? By what mechanism, if any, do Agile 1 and Zinncorp ensure the fulfillment of their contractual obligations to the Federal Reserve and Agile 1 respectively, without subsuming Galaxy's alleged employment relationship with [Ms. Agarwal]?

(Resp., ECF #14 at Pg. ID 463).

Second, Galaxy's own submissions and representations offered conflicting accounts of (1) the relationship amongst Ms. Agarwal and the relevant entities in her alleged chain of employment and (2) the relationship between those entities. For example, Galaxy's counsel told USCIS that Ms. Agarwal had "a valid contract *with Agile 1* to provide services to the Federal Reserve Bank of Atlanta" (Galaxy Counsel Letter, ECF 8-1 at Pg. ID 71; emphasis added), but that representation – which Galaxy's counsel conceded was wrong at the hearing before the Court – contradicted Galaxy's repeated claim to USCIS that *it* employed Ms. Agarwal. Similarly, the March letter from the Bank stated both that Ms. Agarwal "has been contracted *by Agile 1* to provide services to the Federal Reserve Bank of Atlanta" and that "Noopur Agarwal is *employed by Galaxy Software Solutions, Inc*." (Fed. Reserve March 2018 Letter, ECF #8-1 at Pg. ID 89-90; emphasis added.) In that same letter, the Bank says that it "has entered into an agreement with Agile 1" (*id* at Pg. ID 89), but Zinncorp described the Bank as *its* client. (*See* Zinncorp Letter, ECF #8-1 at Pg. ID

17

96.) Given these contradictions and the above-described gaps in Galaxy's submission, USCIS did not act arbitrarily and capriciously when it determined that Galaxy failed to establish that it would have a qualifying employer-employee relationship with Ms. Agarwal during her time at the Bank.

Finally, the Court notes that this is not a case in which USCIS "hid the ball" or forced Galaxy to guess as to what types of evidence would be sufficient to establish its employer-employee relationship with Ms. Agarwal. On the contrary, USCIS gave Galaxy both a *comprehensive* list of evidence that would be helpful in establishing its claimed employment relationship with Ms. Agarwal and sufficient time to gather and present that evidence. (*See* RFE, ECF #8-1 at Pg. ID 62-69.) Galaxy submitted only a small fraction of the evidence identified by USCIS. And while Galaxy correctly notes that it was not legally required to supply any particular piece of evidence in support of the Petition, it has not explained why it chose not to follow USCIS's guidance and submit the identified evidence.

Under all of these circumstances, the Court concludes that USCIS did not act arbitrarily and capriciously when it denied the Petition on the basis that Galaxy had failed to establish its employment relationship with Ms. Agarwal.[5]

---

[5] USCIS's determination that Galaxy failed to demonstrate its employment relationship with Ms. Agarwal is an independent and adequate basis for USCIS's denial of the Petition. Therefore, the Court need not, and does not, address whether USCIS acted arbitrarily and capriciously when it denied the Petition on the

**C**

The Court also rejects Galaxy's contention that USCIS failed to apply the preponderance of evidence standard to the Petition. (*See* Mot., ECF #9 at Pg. ID 426-27.) USCIS expressly acknowledged that standard and its obligation to review the entire record under that standard (*See* USCIS Decision, ECF #8-1 at Pg. ID 46), and Galaxy has not persuaded the Court that USCIS failed to apply the standard.

**IV**

For the reasons explained above, **IT IS HEREBY ORDERED** that Galaxy's motion for summary judgment (ECF #9) is **DENIED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: May 30, 2019

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 30, 2019, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764

---

additional independent basis that Galaxy failed to demonstrate that Ms. Agarwal's position at the Bank would be a specialty occupation.

19